**Mildred Maxine STREET, Appellant**

**v.**

**LINCOLN NATIONAL LIFE INSURANCE COMPANY, the National Bank in North Kansas City, and Zepha A. Street, Respondents.**

**No. 23319.**

Kansas City Court of Appeals.

Missouri.

June 5, 1961.

Williams & Norton, North Kansas City, for appellant.

James C. Davidson, North Kansas City, for respondent Zepha A. Street.

CROSS, Judge.

Plaintiff, Mildred Maxine Street, is the surviving widow of John Albert Sidney Street, Jr., who died on August 30, 1959, and is the beneficiary of a life insurance policy issued on decedent by defendant Lincoln National Life Insurance Company. In the lifetime of decedent he had assigned the policy to defendant, The National Bank in North Kansas City, as collateral security for certain promissory notes which he and his mother, the defendant Zepha A. Street, had coexecuted. Plaintiff filed her petition against the insurance company, the bank, and decedent's mother, seeking in the alternative (1) to recover the proceeds of the policy directly, as beneficiary, or (2) to recover judgment against defendant Zepha A. Street for the amount of the policy—in event the court decided that the bank was entitled to the proceeds. The latter alternative claim is made under an alleged right to be subrogated to the interests of the defendant bank after its debt is discharged by the insurance proceeds.

Before trial the insurance company tendered and paid the insurance benefits into court to abide the judgment. The case was tried by the court without a jury and resulted in a judgment (1) that plaintiff recover nothing in the action; (2) that the bank is entitled to the policy benefits; and (3) that defendant bank recover of defendant Zepha A. Street the full amount of the unpaid note principal and interest in the total sum of $7,299.51, credited with the sum of $4,550, the net amount of policy benefits received by defendant bank. Plaintiff has appealed.

There is no oral testimony in the record. The case was tried on a stipulation of facts incorporating the essential transactions giving rise to the suit. It is shown that at some time prior to December 29, 1955, unknown to plaintiff, decedent had procured a policy of insurance on his life from defendant insurance company in the amount of $4,800 payable to his mother as beneficiary. Later, and on December 29, 1955, decedent and his mother executed a note to defendant bank in the amount of $5,285 and contemporaneously, as insured and beneficiary, executed an assignment of the policy to the bank as collateral security for the payment of the note and "any and all indebtedness, liabilities and obligations now or hereafter existing—owing to assignee by the undersigned or either of them". On July 14, 1958, plaintiff was designated as beneficiary of the policy instead of decedent's mother. On August 7, 1958, decedent and his mother coexecuted a second note in favor of defendant bank in the amount of $1,480. On December 23, 1958, decedent and his mother renewed and consolidated the two notes by coexecuting a renewal note payable to defendant bank in the amount of $6,765. When insured died on August 30, 1959, the policy was in full effect. At that time no payment had been made on the bank indebtedness. No portion of the renewal note principal or interest had been paid.

Upon appeal plaintiff abandons the claim that she is directly entitled to the insurance funds. She now admits that the defendant bank is entitled to receive those funds and credit them as a note payment. Plaintiff contends that she is entitled to a judgment against decedent's mother for $4,800, an amount equal to the policy benefits, claiming that since she was not personally responsible for the debt, she is entitled to be subrogated to the bank's rights and recover from the comaker the amount of insurance benefits paid to the bank under the assignment.

Plaintiff cites no authority to support her contention other than a doctrine developed in fact situations where life insurance proceeds have been paid to a creditor in satisfaction of a decedent's debt and the beneficiary has been subrogated to the creditor's claim *against decedent's estate*—exemplified by the following statement quoted from 29 Am.Jur., Sec. 681 (cited by plaintiff):

"Whether the beneficiary of a life insurance policy which the insured pledged as security for debts has the right to be subrogated to the pledgee's claim against the insured's estate for the amount paid to the pledgee out of the proceeds of the policy depends primarily upon the intention of the insured. Applying this principle, it has been held that the beneficiary is entitled to subrogation to the claim of a creditor against the estate of the insured, where the creditor, instead of proceeding against the estate, obtains satisfaction from the proceeds of the policy, which had been assigned to him as security for payment of the debt, and nothing appears in the assignment or the will to indicate an intention that the insurance proceeds should be the primary source of payment of the debt. Similarly, it has been held that where an insured who had the right to change the beneficiary of a life insurance policy assigned it with other property as collateral security for a bank loan, and upon his death the bank retained part of the proceeds of

the policy in payment of the loan and returned the other collateral to the estate of the insured, the beneficiary of the policy became subrogated to the rights of the bank against the estate of the insured. And it has also been held that the beneficiary is entitled to be subrogated to other security held by the assignee where the insured, in making the assignment for security, specifically provided in the terms thereof that the beneficiaries should be entitled to such right of subrogation. On the other hand, where it appears that it was the insured's intention that the beneficiary should not be entitled to be subrogated to the claim of the assignee, such right will be denied to him."

We accept the foregoing as a generally approved statement of law, applicable to the facts and conditions premised in its text and found in the cases cited by plaintiff which follow that rule. We consider the rule to be a sound and reasonable application of the principle of subrogation, entirely consonant with the basic doctrine that a debt should be paid by the real obligor—by the insured debtor in his lifetime or by his estate after his demise. Plaintiff's cited authority goes only to support the proposition that the policy beneficiary may be subrogated to the rights of the pledgee bank *against the insured's estate,* as a preferred creditor, if it appears that such was the insured's intention. Barbin v. Moore, 85 N.H. 362, 159 A. 409, 83 A.L.R. 62; Farracy v. Perry, Tex.Civ.App., 12 S.W.2d 651.

However, we find nothing in the text statement, or in any case, that even faintly suggests an extension of the subrogation theory to include the right of a policy beneficiary to collect the equivalent of the policy's benefits *from a third party.* Plaintiff's research has been equally fruitless, as she frankly admits. Her brief contains the following statement: " * * * but quite frankly we find none with the same fact situation as this case on appeal". We do not regard the authority submitted by plaintiff as any support for her theory advanced in this appeal. We view it only as a declaration of plaintiff's right to proceed against her husband's estate to recover funds equal to the insurance benefits *if it could be shown that he so intended.* Whether the insured had such intention is not before us in this appeal. If that question were presented for decision, substantial doubt would arise that insured intended subrogation in any form, in view of the following provision contained in the policy assignment:

"(c) (Assignee bank) May apply any moneys paid on the policy upon any of the indebtedness secured hereby without first resorting to any other collateral or proceeding against any other person or persons primarily or secondarily liable for any of the indebtedness secured hereby, and the Assignee shall not be obligated to consider or take notice of any right of contribution, reimbursement or subrogation which any person or persons interested in said policy may have or claim to have against any other person or persons or in any other collateral on account of the application of any of the proceeds of the policy in payment of the indebtedness secured thereby, the Assignee being entitled to conclusively assume that no such right of contribution, reimbursement or subrogation exists irrespective of any notice to the contrary".

It is of no significance to the issue that insured designated plaintiff as beneficiary of the policy after it was assigned to the bank. Barbin v. Moore, supra. Plaintiff's rights as beneficiary were inchoate during insured's lifetime and subject to defeasance by insured's use of the policy. He had the right to assign it to the bank as security for the note. The interest of his beneficiary, whether designated before or after assignment, is subject to that right of assignment.

In the absence of specific precedent applicable to the facts in this case, our decision must rest upon basic principles of the subrogation doctrine. Subrogation is a creature of equity. Its object is to promote and accomplish justice and to prevent injustice. It is the means which equity employs to compel the ultimate payment of a debt by one who, in justice, equity and good conscience, should pay it. The doctrine is most frequently applied to situations where a person only secondarily liable is compelled to pay a debt for which another is primarily liable. The burden is upon the party seeking subrogation to establish clearly and convincingly that as between himself and another party, the latter, in equity, should bear the loss. Fundamentally, the right of subrogation exists only against the principal debtor and does not extend against a person who is merely secondarily liable. 83 C.J.S. Subrogation § 7.

Plaintiff has shown no fact or circumstance tending to establish a superior equity in her favor as against defendant Zepha A. Street. It does not clearly appear from the record that Zepha A. Street is the primary obligor in this case who should, in equity, bear the burden of the debt. In fact, we are given warrant to indulge in strong inferences to the contrary. Defendant Zepha A. Street suggests in her brief: "As stated by this respondent in her brief filed with the trial court and undisputed by appellant, *'defendant Zepha A. Street received no part of the consideration for either of the two notes signed by her and her son', and later renewed by consolidation into one note, which was unpaid on the son's death. Respondent was an accommodation co-maker on all three notes"*. (Emphasis supplied.) The substance of the quoted statement was repeated to this court in oral argument by counsel for Zepha A. Street. No denial or counterstatement was made on behalf of plaintiff by her counsel in oral rebuttal or has been asserted in a reply brief. If it were not true that Zepha A. Street received no con-

sideration for signing the notes and was only an accommodation maker—why has plaintiff ignored her adversary's repeated statements to that effect, without denial or refutation? It is the general rule that an uncontroverted statement made in a respondent's brief relative to the evidence, not disputed in a reply brief, will be taken as true. 5 C.J.S. Appeal and Error § 1345, p. 394. Missouri courts follow that rule. See Dent v. Investors' Security Ass'n, 300 Mo. 552, 254 S.W. 1080.

We now have a more lucid view of the note transaction and of its effect upon the rights and duties of the participants. We are permitted to believe that plaintiff's husband received all the consideration and benefit. As between himself and his mother, he was the primary obligor. His mother received no benefit or consideration for her endorsement of his notes and became only secondarily liable as his accommodation maker. Under such circumstances it would be fantasy to conceive that plaintiff, the gratuitous beneficiary of the pledged policy, could gather to herself the fruits of her husband's generosity and cast the burden of his debt upon his mother who received nothing for her accommodation signature. It would be more realistic to say that any right of subrogation evolving from the events in this case would flow in the direction of Zepha A. Street, since the assets of decedent insured's estate should be the ultimate source of repayment.

Plaintiff insists that the trial court never passed on the issue of whether she is entitled to a judgment against defendant Zepha A. Street. The complaint is unavailing. The judgment provides "that the plaintiff, Mildred Maxine Street, recover nothing in this action". That recital is clearly an adjudication of plaintiff's demand for judgment against Zepha A. Street.

The judgment of the trial court was for the right parties and is affirmed.

All concur.