715 F.Supp. 942 (1988)
BOATMEN'S BANK OF CAPE GIRARDEAU, Plaintiff,
v.
Patrick F. EVANS, et al., Defendants.
No. S 88-0074C(4).
United States District Court, E.D. Missouri, Southeastern Division.
October 27, 1988.
Tom K. O'Loughlin, O'Loughlin O'Loughlin & McManaman, Cape Girardeau, Mo., for plaintiff.
Eric Tolen, Asst. U.S. Atty., St. Louis, Mo., David Beeson, Buerkle Beeson & Ludwig, Jackson, Mo., for defendants.

MEMORANDUM AND ORDER
CAHILL, District Judge.
This matter comes before the Court on a motion for summary judgment filed by the United States of America acting on behalf of defendant Farmers Home Administration (FmHA) and a cross-motion for summary judgment filed by plaintiff Boatmen's Bank of Cape Girardeau (Boatmen's).
*943 As between these parties, the sole dispute between FmHA and Boatmen's concerns the priority of competing liens in certain farm equipment.
On April 13, 1979, defendant FmHA loaned $69,000 to defendant Evans, who signed a promissory note which was twice rescheduled and secured by security agreements of various dates. The security agreements, covering farm machinery, equipment and other farm chattels, were properly perfected. Each agreement contained an after-acquired property clause.
In the latter part of 1981, Evans entered into a retail sales installment contract and security agreement with Heuer Sons Implement Company (Heuer) to purchase, on credit, a Massey-Ferguson Model 550 rice combine, table and reel. Heuer then assigned its interest in the contract to Massey-Ferguson Credit Corporation (MFCC).
On August 15, 1983, Evans obtained a $5000 loan from Boatmen's. In exchange, Evans executed a promissory note and collateral security agreement giving Boatmen's a security interest in the Massey-Ferguson Model 550 rice combine. Due to financial difficulty, Evans' payments became delinquent on the loan in 1984.
On March 7, 1984, Boatmen's made a second loan to Evans in excess of $36,000 which was secured by a collateral security agreement granting another security interest in the Massey-Ferguson Model 550 rice combine and the 18 foot table and reel. Evans used the proceeds of this second loan to pay his obligations under the contract with MFCC and to pay the delinquent first loan to Boatmen's.
After Boatmen's had refinanced the second loan several times it became apparent that Evans would not meet his obligation. Therefore, Boatmen's instituted this action to collect the amount owed by Evans under the March 7, 1984 note. FmHA was made a party to this action by virtue of Evans' petition for interpleader.
Both FmHA and Boatmen's have moved for summary judgment, claiming there is no material issue of fact and they are each entitled to judgment as a matter of law. For the reasons enumerated below, this Court finds that FmHA holds the superior interest in the disputed equipment. Therefore, summary judgment in favor of FmHA is hereby granted.
Generally, priority between conflicting security interests in the same collateral is determined by the first-in-time rule: the secured party who is first to properly file has priority. MO.REV.STAT. § 400.9-312(5)(a); MorAmerica Mortg. Co. v. Home Sav. Ass'n., 654 S.W.2d 654, 655 (Mo.Ct.App.1983). One exception to the first-in-time rule is that a properly perfected purchase money security interest (PMSI) has priority over a conflicting security interest in the same collateral. MO. REV.STAT. § 400.9-312(4).
FmHA's interest in the equipment arises from a clause in the 1979 Evans loan document which grants to FmHA a security interest in "all farm and other equipment ... now owned or hereafter acquired by the Debtor...." Under such an "after-acquired property" clause, property obtained by a debtor after the initial transaction with a creditor may properly be subject to the creditor's security interest. MO.REV. STAT. § 400.9-204(3). In addition, the date of filing for purposes of priority is the filing date of the initial financing statement. In National Cash Register Co. v. Firestone & Co., 346 Mass. 255, 191 N.E.2d 471 (1963), a creditor made a loan to the debtor, who executed a security agreement with an after-acquired property clause. The creditor properly filed financing statements evidencing his security interest. A second creditor then sold a cash register to the debtor on a retail sales contract and filed a financing statement. When the debtor defaulted, the court gave the first creditor priority in the cash register because it found that the property was covered by the after-acquired clause and because of the first-in-time to file rule. Id. 191 N.E.2d at 472, 475. Similarly, in the instant matter, FmHA properly filed a financing statement evidencing a security agreement with an after-acquired clause. Thus, absent an exception to the first-in-time rule of priority, FmHA has a superior interest in the Massey equipment.
*944 Boatmen's claims a superior interest in the Massey equipment in part by virtue of the purchase money security interest exception to the first-in-time rule. A properly perfected PMSI has priority over an interest acquired under an after-acquired property clause. MO.REV.STAT. § 400.9-107, comment 1. At one point in the series of events leading up to this lawsuit, MFCC did have an interest superior to FmHA in the Massey equipment because it was assigned the purchase money contract from Heuer. Boatmen's argues that it was equitably subrogated to the rights of MFCC when it made the second loan to Evans enabling him to satisfy the MFCC debt.
The doctrine of equitable subrogation is an equitable remedy utilized to compel the payment of a debt by one who in justice, equity, and good conscience should pay it. Street v. National Life Ins. Co., 347 S.W.2d 455, 459 (Mo.Ct.App.1961). As a rule, one who, pursuant to an obligation to do so, pays for a loss resulting from the default of another will be subrogated to the rights of the creditor as against the defaulter. Kroeker v. State Farm Mutual Automobile Ins. Co., 466 S.W.2d 105, 110 (Mo.Ct.App.1971), citing 83 C.J.S. Subrogation § 16. The right also applies to individuals who, although not under a legal right to pay a debt, do so to protect their own interests. Quality Wood Chips, Inc. v. Adolphsen, 636 S.W.2d 94, 97 (Mo.Ct.App. 1982). However, one who voluntarily pays the debt is not entitled to the benefit of subrogation. Frago v. Sage, 737 S.W.2d 482, 484 (Mo.Ct.App.1987). The burden is on the party seeking subrogation to establish clearly and convincingly that the doctrine applies. Street, 347 S.W.2d at 459.
The Court is convinced that the doctrine of equitable subrogation applies in this case, although the factual situation is somewhat different than the usual subrogation case which generally involves construction sureties. The clear weight of authority indicates that the Uniform Commercial Code does not abrogate, modify, affect, or abridge the doctrine of equitable subrogation. In re J.V. Gleason Co., 452 F.2d 1219, 1223 (8th Cir.1971); Mid-Continent Casualty Co. v. First National Bank & Trust Co., 531 P.2d 1370, 1373 (Okl.1975). The case that Boatmen's relies upon, French Lumber Co. v. Commercial Realty & Finance, 346 Mass. 716, 195 N.E.2d 507 (1964), has been followed by many courts and approved by scholars. See In re J.V. Gleason Co., 452 F.2d at 1223; Kaplan v. Walker, 164 N.J.Super. 130, 395 A.2d 897, 900 (1978) ("The French Lumber Co. case is cited and described as `entirely sound' in 1 Gilmore, Security Interests in Personal Property, § 15.3 at 476, n. 7 (1965)"). In order to protect its interest in the Massey equipment, Boatmen's made the second loan to Evans and assured MFCC would be paid by making the loan proceeds check payable to both Evans and MFCC. These facts support the application of the doctrine of equitable subrogation.
The remaining inquiry is, therefore, what rights and duties did MFCC have at the time Boatmen's extended the second loan. One who is subrogated to the rights of a secured party has the rights and duties of the secured party. MO.REV. STAT. § 400.9-504(5). Although the holder of a PMSI generally has priority over conflicting security interests, such status is not absolute. If the debt secured by a PMSI is refinanced, the purchase money nature of security interest is destroyed. In re Faughn, 69 B.R. 18, 20 (Bkrtcy.E.D.Mo. 1986); In re Janz, 67 B.R. 553, 556 (Bkrtcy. D.N.D.1986). Prior to March of 1984, when Boatmen's made the second loan, MFCC enjoyed priority over others holding security interests in Evans' Massey equipment by virtue of the PMSI it was assigned by Heuer. However, when Boatmen's extended the second loan, it in effect refinanced the obligation and thereby extinguished its purchase money nature. Thus, after March, 1984, MFCC would not have had priority because it would no longer have held a PMSI. Although Boatmen's is subrogated to MFCC's rights, such rights are not superior to FmHA, which filed its security interest before either MFCC or Boatmen's. Accordingly,
IT IS HEREBY ORDERED that FmHA's motion for summary judgment is *945 granted and Boatmen's cross-motion for summary judgment is denied. This order does not affect remaining issues, if any, between Boatmen's and Evans.